UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

JAMES FULCHER, JAMES RIED, and ALBERTA FUCLHER,

                                Plaintiffs,

                 -against-

THE CITY OF NEW YORK, COMMISSIONER RAYMOND W. KELLY, COMMISSIONER MARTIN F. HORN, CAPT. ROBERT HANSON, LT. JAMES CAHILL, SGT. DWIGHT SMITH, Shield # 4019, DET. DARNAY HARRIS, Shield # 27264, DET. SCOTT HOCKNEY, Shield # 13594 and Tax # 925463, DET. EBONY HUNTLEY, Shield # 11758, DET. GEORGE WOLFRAM, Shield # 24893, DET. JOHN GAMBLE Shield # 28205, DET. ROBERT CURLEY, Shield # 5767, DET. ALEX ARTY, Shield # 1112, DET. JOHN SCHABHUTTL, Shield # 17502, U.C. # 8721, U.C. # 30865, WARDEN JOHN DOE # 1, and C.O. JOHN DOES # 1-5, the individual defendants sued individually and in their official capacities,

                                Defendants.

------------------------------------------------------------------------X

**FIRST AMENDED COMPLAINT**

08 CV 1110 (CPS) (CLP)

ECF Case

Jury Trial Demanded

## PRELIMINARY STATEMENT

      1.      This is a civil rights action in which plaintiffs seek relief for the violation of plaintiffs' rights secured by 42 U.S.C. § 1983, the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. The claims arise from an incident(s), which occurred on or about June 30, 2006. During the incident the City of New York, members of the New York City Police Department ("NYPD"), and members of the New York City Department of Corrections ("DOC") subjected plaintiffs to, among other things, false arrest and imprisonment, excessive force, unlawful search and seizure, malicious prosecution, unlawful strip search, assault and battery, intentional and negligent infliction of emotional distress, retaliation for free speech, fabricated evidence, conspiracy, harassment, unconstitutional

conditions of confinement, abuse of process, gross negligence, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and implementation and continuation of an unlawful municipal policy, practice, and custom. Plaintiffs seek compensatory and punitive damages, declaratory relief, an award of costs and attorney's fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2. This action is brought pursuant to 42 U.S.C. § 1983, and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

3. Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper here pursuant to 28 U.S.C. § 1391 because the acts in question occurred in Kings County, and the City of New York is subject to personal jurisdiction in the Eastern District of New York.

## PARTIES

5. Plaintiff James Fulcher is a resident of the State of New York, Kings County.

6. Plaintiff James Ried is a resident of the State of New York, Kings County, and is plaintiff James Fulcher's son.

7. Plaintiff Alberta Fulcher is a resident of the State of New York, Kings County, and is plaintiff James Fulcher's mother and plaintiff James Ried's grandmother.

8. Defendant City of New York is a municipal corporation organized under the laws of the State of New York, which violated plaintiffs' rights as described herein.

9. Defendant Commissioner Raymond W. Kelly is the Commissioner of the NYPD who violated plaintiffs' rights as described herein.

10. Defendant Martin F. Horn is the Commissioner of the DOC who violated plaintiff James Fulcher's rights as described herein.

11. Defendant Captain Robert Hanson is a New York City Police Supervisor employed with the Narcotics Bureau Brooklyn North located in Brooklyn, New York who violated plaintiffs' rights as described herein.

12. Defendant Lieutenant James Cahill is a New York City Police Supervisor employed with the Narcotics Bureau Brooklyn North located in Brooklyn, New York who violated plaintiffs' rights as described herein.

13. Defendant Sergeant Dwight Smith is a New York City Police Supervisor, assigned Shield # 4019, employed with the Narcotics Bureau Brooklyn located in Brooklyn, New York who violated plaintiffs' rights as described herein.

14. Defendant Detective Darnay Harris is a New York City Police Detective, assigned Shield # 27264, employed with the Narcotics Bureau Brooklyn North located in Brooklyn, New York who violated plaintiffs' rights as described herein.

15. Defendant Detective Scott D. Hockney is a New York City Police Detective, assigned Shield # 13594, and Tax # 925463, employed with the Narcotics Bureau Brooklyn North located in Brooklyn, New York who violated plaintiffs' rights as described herein.

16. Defendant Detective Ebony Huntley is a New York City Police Detective, assigned Shield # 11758, employed with the Narcotics Bureau Brooklyn North located in Brooklyn, New York who violated plaintiffs' rights as described herein.

17. Defendant Detective George Wolfram is a New York City Police Detective, assigned Shield # 24893, employed with the Narcotics Bureau Brooklyn North located in Brooklyn, New York who violated plaintiffs' rights as described herein.

18. Defendant Detective John Gamble is a New York City Police Detective, assigned Shield # 28205, employed with the Narcotics Bureau Brooklyn North located in Brooklyn, New York who violated plaintiffs' rights as described herein.

19. Defendant Detective Robert Curley is a New York City Police Detective, assigned Shield # 5767, employed with the Narcotics Bureau Brooklyn North located in Brooklyn, New York who violated plaintiffs' rights as described herein.

20. Defendant Detective Alex Arty is a New York City Police Detective, assigned Shield # 1112, employed with the Narcotics Bureau Brooklyn North located in Brooklyn, New York who violated plaintiffs' rights as described herein.

21. Defendant Detective John Schabhuttl is a New York City Police Detective, assigned Shield # 17502, employed with the Narcotics Bureau Brooklyn North located in Brooklyn, New York who violated plaintiffs' rights as described herein.

22. Defendant Detective U.C. # 8721 is a New York City Police Detective employed with the Narcotics Bureau Brooklyn North located in Brooklyn, New York who violated plaintiffs' rights as described herein.

23. Defendant Detective U.C. # 30865 is a New York City Police Detective employed with the Narcotics Bureau Brooklyn North located in Brooklyn, New York who violated plaintiffs' rights as described herein.

24. Defendant Warden John Doe # 1 is a New York City Correction Warden employed at the Otis Bantum Correctional Center ("OBCC") located in East Elmhurst, New York who violated plaintiff James Fulcher's rights as described herein.

25. Defendants Correction Officer John Does # 1-5 are New York City Correction Officers employed at OBCC located in East Elmhurst, New York who violated plaintiff James Fulcher's rights as described herein.

26. The individual defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

27. The following is a summary set for the purpose of demonstrating and providing notice of plaintiffs' claims against the defendants. Plaintiffs have not set forth each and every fact concerning the incident(s) described below.

28. On June 30, 2006, at approximately 6:00 a.m. to 7:00 a.m., at and in the vicinity of 575 Franklin Avenue, Apt. 2, Brooklyn, New York, police officers assigned to the Narcotics Bureau Brooklyn North, including upon information and belief, defendants Captain Hanson, Lieutenant Cahill, Sergeant Smith, and Detectives Harris, Hockney, Huntley, Wolfram, Gamble, Curley, Arty, Schabhuttl, U.C. # 8721, and U.C. # 30865, at times acting in concert and at times acting independently, committed the following illegal acts against the plaintiffs.

29. Plaintiffs were in their apartment at 575 Franklin Avenue, Apt. 2, Brooklyn, New York, when defendants Captain Hanson, Lieutenant Cahill, Sergeant Smith, and Detectives Harris, Hockney, Huntley, Wolfram, Gamble, Curley, Arty, Schabhuttl, U.C. # 8721, and U.C. # 30865, without either consent, an arrest warrant, a lawfully obtained search warrant,

probable cause, or reasonable suspicion that plaintiffs (or any third person) had committed a crime unlawfully entered their apartment.

30. Once defendants entered the apartment, plaintiffs were not free to disregard the defendants' questions, walk way or leave the scene.

31. While inside the apartment defendants Captain Hanson, Lieutenant Cahill, Sergeant Smith, and Detectives Harris, Hockney, Huntley, Wolfram, Gamble, Curley, Arty, Schabhuttl, U.C. # 8721, and U.C. # 30865 without either consent, an arrest warrant, a lawfully obtained search warrant, probable cause, or reasonable suspicion that plaintiffs (or any third person) had committed a crime falsely arrested plaintiffs.

32. During the arrest of plaintiff James Fulcher, defendants Captain Hanson, Lieutenant Cahill, Sergeant Smith, and Detectives Harris, Hockney, Huntley, Wolfram, Gamble, Curley, Arty, Schabhuttl, U.C. # 8721, and U.C. # 30865, at times acting in concert and at times acting independently, maliciously, gratuitously, and unnecessarily grabbed plaintiff, struck plaintiff, pushed plaintiff against a wall, shoved plaintiff into a room, threw plaintiff on the ground, forced knees into plaintiff's back, and subjected plaintiff to excessively tight handcuffs, and struck plaintiff while handcuffed.  Plaintiff was injured as a result of these acts.  Those defendants who did not touch plaintiff witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

33. During the arrest of plaintiff James Ried (who was seventeen years old), defendants Captain Hanson, Lieutenant Cahill, Sergeant Smith, and Detectives Harris, Hockney, Huntley, Wolfram, Gamble, Curley, Arty, Schabhuttl, U.C. # 8721, and U.C. # 30865, at times acting in concert and at times acting independently, maliciously, gratuitously, and unnecessarily grabbed plaintiff, struck plaintiff, threw plaintiff on the ground, and subjected plaintiff to

excessively tight handcuffs. Plaintiff was injured as a result of these acts. Those defendants who did not touch plaintiff witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

34. During the arrest of plaintiff Alberta Fulcher (who was sixty-six years old), defendants defendants Captain Hanson, Lieutenant Cahill, Sergeant Smith, and Detectives Harris, Hockney, Huntley, Wolfram, Gamble, Curley, Arty, Schabhuttl, U.C. # 8721, and U.C. # 30865, at times acting in concert and at times acting independently, maliciously, gratuitously, and unnecessarily grabbed plaintiff from her bed, threw plaintiff to the floor (which caused her gown to rip exposing private areas of her body), forced knees into plaintiff's back, subjected plaintiff to excessively tight handcuffs, and shoved plaintiff while handcuffed. Plaintiff was injured as a result of these acts. Those defendants who did not touch plaintiff witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

35. Thereafter, defendants Captain Hanson, Lieutenant Cahill, Sergeant Smith, and Detectives Harris, Hockney, Huntley, Wolfram, Gamble, Curley, Arty, Schabhuttl, U.C. # 8721, and U.C. # 30865 unnecessarily and retaliatory kept plaintiffs James Fulcher, James Ried, and Alberta Fulcher in handcuffs while they searched the apartment.

36. While searching the apartment, defendants Captain Hanson, Lieutenant Cahill, Sergeant Smith, and Detectives Harris, Hockney, Huntley, Wolfram, Gamble, Curley, Arty, Schabhuttl, U.C. # 8721, and U.C. # 30865 maliciously and unnecessarily damaged plaintiffs' personal property, furniture and fixtures.

37. Defendants Captain Hanson, Lieutenant Cahill, Sergeant Smith, and Detectives Harris, Hockney, Huntley, Wolfram, Gamble, Curley, Arty, Schabhuttl, U.C. # 8721,

and U.C. # 30865 searched the entire apartment, and found no evidence of weapons, contraband, narcotics, or illegal activity to justify the arrest of plaintiffs.

    38.  While in the apartment, the defendants also detained plaintiffs' other family members in the apartment.

    39.  While in the apartment, plaintiff Alberta Fulcher's private areas remained exposed and the defendants ignored her request to be allowed to dress.

    40.  Thereafter, the defendants removed plaintiff James Fulcher from the apartment, and threatened to arrest the other two plaintiffs and his other family members, and to have any minors placed in the custody of the New York City Administration for Children Services, if he did not provide a false confession.

    41.  When plaintiff James Fulcher refused to provide a false confession, the defendants threatened plaintiffs Alberta Fulcher and James Ried and the other family members with arrest, and to have any minors placed in the custody of the New York City Administration for Children Services, if they did not provide false evidence against plaintiff James Fulcher.

    42.  When plaintiffs Alberta Fulcher and James Ried and the other family members refused to provide false evidence against plaintiff James Fulcher, defendants Captain Hanson, Lieutenant Cahill, Sergeant Smith, and Detectives Harris, Hockney, Huntley, Wolfram, Gamble, Curley, Arty, Schabhuttl, U.C. # 8721, and U.C. # 30865 conspired to bring false criminal charges against plaintiff James Fulcher fabricating charges and evidence against him.

    43.  Eventually, defendants transported plaintiff James Fulcher to the 77th Precinct, where he was held before being transferred to Brooklyn Central Booking.

44. Defendant defendants Captain Hanson, Lieutenant Cahill, and Sergeant Smith were present during the above-described incidents, and supervised and approved all the above-described conduct against plaintiffs.

45. At Central Booking plaintiff was subjected to depraved, filthy, and inhumane conditions of confinement, including overcrowding.

46. The guards and personnel assigned to Central Booking looked the other way at these dangerous conditions, and ignored arrestees who sought their assistance.

47. While plaintiff James Fulcher was incarcerated at the 77th Precinct and Central Booking awaiting arraignment, defendants Captain Hanson, Lieutenant Cahill, Sergeant Smith, and Detectives Harris, Hockney, Huntley, Wolfram, Gamble, Curley, Arty, Schabhuttl, U.C. # 8721, and U.C. # 30865, pursuant to a conspiracy, falsely and maliciously told the Kings County District Attorney's Office that plaintiff had committed a crime; and based on the defendants' false allegations, the District Attorney's Office prosecuted plaintiff James Fulcher under case number 2006KN044996.

48. After arraignment, plaintiff James Fulcher was remanded on bail to the custody of the DOC at OBCC located at East Elmhurst, New York.

49. While at OBCC, defendants Warden John Doe # 1 and Correction Officers John Does # 1-5 subjected plaintiff James Fulcher to a non-private strip search(es) without reasonable suspicion or probable cause in a non-private manner and in the presence of nonessential people, such as other detainees.

50. Plaintiff James Fulcher was subjected to the DOC's unlawful policy of strip-searching in public regardless of reasonable suspicion or probable cause. He was forced to squat and expose his private areas.

9

51.     The fact that the strip search of plaintiff James Fulcher was carried out in a non-private manner is sufficient in and of itself to violate the Constitution. It is well established that, even where there is justification for a strip search the search must be conducted in a reasonable manner. A strip search is unreasonable if it is carried out in a non-private manner and in the presence of nonessential people, such as other detainees.

52.     No illegal items, narcotics, or contraband were recovered from plaintiff James Fulcher during the above-described strip search(es).

53.     Plaintiff James Fulcher was held in custody until approximately July 5, 2006, and after several court appearances, the charges against him were dismissed in their entirety on January 1, 2007, terminating the case in his favor.

54.     The aforesaid events were not an isolated incident. Defendants Commissioners Raymond W. Kelly and Martin F. Horn, Captain Hanson, and Warden John Doe # 1 have been aware (from lawsuits, notices of claim and complaints) that many of their officers are insufficiently trained on the proper way to use force, search arrestees and detainees, and treat innocent and/or uninvolved individuals who are found at an incident scene and/or investigation location. Commissioners Raymond W. Kelly and Martin F. Horn, Captain Hanson, and Warden John Doe # 1 are further aware that such improper training has often resulted in a deprivation of civil rights. Despite such notice, Commissioners Raymond W. Kelly and Martin F. Horn, Captain Hanson, and Warden John Doe # 1 have failed to take corrective action. This failure caused the officers in the present case to violate the plaintiffs' civil rights.

55.     Moreover, Commissioners Raymond W. Kelly and Martin F. Horn, Captain Hanson, and Warden John Doe # 1 were aware prior to the incident that the defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as

officers. Despite such notice, Commissioners Raymond W. Kelly and Martin F. Horn, Captain Hanson, and Warden John Doe # 1 have retained these officers, and failed to adequately train and supervise them.

56. The individual defendants acted in concert committing the above-described illegal acts toward plaintiffs.

57. Plaintiffs did not resist arrest at any time during the above incidents.

58. Plaintiffs did not engage in suspicious, unlawful or criminal activity prior to or during the above incidents.

59. The individual defendants did not observe plaintiffs engaged in suspicious, unlawful, or criminal conduct at any time prior to or during the above incidents.

60. At no time prior to, during or after the above incidents were the individual defendants provided with information, or in receipt of a credible or an objectively reasonable complaint from a third person, that plaintiffs had engaged in suspicious, unlawful or criminal conduct.

61. As a result of defendants' actions plaintiffs experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

### FEDERAL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

62. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

63. The conduct of defendant officers, as described herein, amounted to false arrest and imprisonment, excessive force, unlawful search and seizure, malicious prosecution, unlawful strip search, assault and battery, intentional and negligent infliction of emotional

distress, retaliation for free speech, fabricated evidence, conspiracy, harassment, unconstitutional conditions of confinement, abuse of process, gross negligence, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and implementation and continuation of an unlawful municipal policy, practice, and custom.

64. The conduct of the defendant officers, as described herein, violated plaintiffs' rights under 42 U.S.C. §§ 1983 and 1985(3), First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution by committing false arrest and imprisonment, excessive force, unlawful search and seizure, malicious prosecution, unlawful strip search, assault and battery, intentional and negligent infliction of emotional distress, retaliation for free speech, fabricated evidence, conspiracy, harassment, unconstitutional conditions of confinement, abuse of process, gross negligence, negligent hiring and retention of incompetent and unfit employees, negligent supervision, training and instruction of employees, and implementation and continuation of an unlawful municipal policy, practice, and custom.

65. Defendants acted under pretense and color of state law and their individual and official capacities and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiffs of their rights secured by 42 U.S.C. §§ 1983 and 1985(3), Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

66. As a direct and proximate result of the misconduct and abuse detailed above, plaintiffs experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

67. The plaintiffs are also entitled to receive punitive damages because defendants' actions were motivated by extreme recklessness and indifference to the plaintiffs' rights.

### FEDERAL CLAIMS AGAINST DEFENDANTS KELLY AND HORN

68. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

69. Defendants Kelly and Horn are liable, in their official capacity, to plaintiffs because: (1) they created and allowed to continue a policy or custom under which unconstitutional practices occurred, (2) they were grossly negligent in supervising subordinates who committed the wrongful acts, and (3) they exhibited deliberate indifference to the rights of others by failing to act on information indicating that unconstitutional acts were occurring.

70. Upon information and belief, defendants Kelly and Horn were aware from notices of claim, lawsuits, complaints, and the NYPD's and DOC's own observations that the officers sued in the present case were unfit to be police officers, and that it was highly likely that they would commit the acts alleged in the present case.

71. Nevertheless, defendants Kelly and Horn exercised deliberate indifference by failing to take remedial action.

72. The aforesaid conduct by defendants Kelly and Horn violated plaintiffs' rights under 42 U.S.C. §§ 1983 and 1985(3), and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution by failing to re-train the defendant subordinate officers, failing to adequately discipline the defendant subordinate officers, failing to adequately investigate prior complaints against the defendant subordinate officers either at the facilities where the incidents occurred, or at their Headquarters located in New York, New York, and

creating a culture where officers are encouraged to harass, assault and violate, those who question their authority, and acting in manner which amounted to negligent hiring, training, monitoring and retention of incompetent employees.

73. As a direct and proximate result of the misconduct and abuse detailed above, plaintiffs experienced personal and physical injuries, pain and suffering, fear, psychological pain, emotional distress, mental anguish, embarrassment, and humiliation.

74. The aforesaid conduct of defendants Kelly and Horn amounted to negligent hiring, training, monitoring and retention of incompetent employees.

**FEDERAL CLAIMS AGAINST THE CITY OF NEW YORK**

75. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

76. The City of New York directly caused the constitutional violations suffered by plaintiffs.

77. Upon information and belief, the City of New York was aware from notices of claim, lawsuits, complaints, and from NYPD's and DOC's own observations, that the officers involved in the present case were unfit to be police officers, and that it was highly likely that they would commit the acts alleged in the present case.

78. Nevertheless, the City of New York exercised deliberate indifference by failing to take remedial action. The City of New York failed to properly train, retrain, supervise, discipline, monitor, and improperly utilized and retained these officers. Moreover, the City of New York failed to adequately investigate prior complaints against the officers and created a culture where officers can harass, assault, and violate individuals without consequence. Indeed, when individuals file complaints against officers, the City has a practice of failing to substantiate

14

or address the complaint, even under circumstances where the complaint is corroborated and credible, and the account given by the officer is unworthy of belief.

79. The aforesaid conduct by the City of New York violated plaintiffs' rights under 42 U.S.C. §§ 1983 and 1985(3), and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

80. Moreover, the aforesaid conduct by the City of New York amounted to negligent hiring, training, monitoring and retention of incompetent employees.

WHEREFORE, plaintiffs demand a jury trial and the following relief jointly and severally against the defendants:

    a.    Compensatory damages in an amount to be determined by a jury;

    b.    Punitive damages in an amount to be determined by a jury;

    c.    Costs, interest and attorney's fees; and

    d.    Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:    New York, New York
               August 18, 2008

                                MICHAEL O. HUESTON, ESQ.
                                *Attorney for Plaintiffs*
                                350 Fifth Avenue, Suite 4810
                                New York, New York 10118
                                (212) 643-2900
                                mhueston@nyc.rr.com
                                By:

                                _____
                                MICHAEL O. HUESTON (MH-0931)